# United States Court of Appeals for the Federal Circuit

2009-7107

MICHAEL ARZIO,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

Kenneth M. Carpenter, Carpenter, Chartered, of Topeka, Kansas argued for claimant-appellant.

Scott D. Austin, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Martin F. Hockey, Jr., Assistant Director. Of counsel on the brief were David J. Barrans, Deputy Assistant General Counsel, and Amanda R. Blackmon, Attorney, Office of the General Counsel, United States Department of Veterans Affairs, of Washington, DC.

Appealed from: United States Court of Appeals for Veterans Claims

Judge Robert N. Davis

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2009-7107

MICHAEL ARZIO,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

Appeal from the United States Court of Appeals for Veterans Claims in 07-1844, Judge Robert N. Davis.

_____

DECIDED:  April 19, 2010

_____

Before MAYER, CLEVENGER, and MOORE, Circuit Judges.

MAYER, Circuit Judge.

Michael Arzio appeals the judgment of the United States Court of Appeals for Veterans Claims ("Veterans Court") which affirmed a decision of the Board of Veterans' Appeals denying his claim for disability compensation for post-traumatic stress disorder ("PTSD").  See Arzio v. Shinseki, No. 07-1844, 2009 U.S. App. Vet. Claims LEXIS 438 (Vet. App. Mar. 25, 2009).  We affirm.

BACKGROUND

Arzio served in the United States Army from October 1959 to April 1960 and in the United States Navy from August 1960 to June 1962. He did not participate in combat.

In December 1960, Arzio reported to sick bay complaining of pain in his right foot. The examiner found no abnormalities on examination and recorded a clinical impression of "psychoneurosis." Arzio was subsequently seen for an orthopedic evaluation of reported pain in his right leg. The examiner noted that he seemed "very anxious and apprehensive," and stated that he believed Arzio had "a type of conversion reaction [and] possibly needs psychiatric eval[uation] since his symptoms seem . . . to be out of proportion to any organic difficulties he is having." Subsequent examiners reported that Arzio seemed "quite nervous," and that his claims of chest pain likely had a "psychogenic origin." A January 1962 medical report indicated that his asserted gastrointestinal pain was likely a "psychophysical reaction." When Arzio was discharged from the Navy in June 1962, however, he was evaluated as psychiatrically normal.

Twenty-eight years later, in September 1990, Arzio filed a claim seeking disability compensation for PTSD. A Department of Veterans Affairs Regional Office ("RO") denied his claim, concluding that he had failed to establish that his PTSD was incurred in, or aggravated by, his military service. In January 2001, however, the board reopened the claim, concluding that Arzio had presented new and material evidence, including "a substantial quantity of medical documentation from private and [Veterans Administration] physicians relating to [Arzio's] ongoing care for psychiatric problems

including PTSD." See 38 U.S.C. § 5108 ("If new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim."). On remand, the RO acknowledged that Arzio was receiving treatment for PTSD and other psychiatric problems, but denied his claim for service-connected benefits on the ground that Arzio "ha[d] not provided any specific information that could be used to verify" his claimed in-service stressors. The board affirmed, concluding that "[t]he contemporaneous military evidence does not corroborate the veteran's claim that he engaged in combat with an enemy and shows that the veteran's claims of in-service stressors are not creditable."

In January 2004, the Veterans Court granted the parties' joint motion to vacate the board's decision and remanded the case for further development. On remand, the board again determined that Arzio had failed to show that he suffered from a verified stressor during his military service and that he was therefore not entitled to disability compensation for PTSD.

Arzio then appealed to the Veterans Court. He did not contest the board's determination that he had failed to produce credible evidence of an in-service stressor, but argued that service connection for PTSD could be established, pursuant to 38 C.F.R. § 3.303, without evidence that any in-service stressor occurred. The Veterans Court, however, rejected this argument, concluding that a veteran cannot establish entitlement to service connection for PTSD without meeting the requirements of 38 C.F.R. § 3.304(f), including credible evidence of an in-service stressor.

DISCUSSION

In reviewing a judgment of the Veterans Court, this court is vested with jurisdiction to "decide all relevant questions of law, including interpreting constitutional and statutory provisions." 38 U.S.C. § 7292(d)(1). We conduct a de novo review of the court's legal determinations. See Buchanan v. Nicholson, 451 F.3d 1331, 1334 (Fed. Cir. 2006); Andre v. Principi, 301 F.3d 1354, 1358 (Fed. Cir. 2002).

Arzio challenges the Veterans Court's interpretation of 38 C.F.R. § 3.303 and 38 C.F.R. § 3.304(f). He contends that the court erroneously concluded that the general requirements for service connection contained in section 3.303 are subordinate to the specific requirements for establishing service connection for PTSD contained in section 3.304(f). In essence, Arzio argues that sections 3.303 and 3.304(f) provide alternative methods by which a veteran may obtain service-connected benefits for PTSD.

We find this argument unpersuasive. The plain language of section 3.304(f) mandates that a veteran provide credible supporting evidence of an in-service stressor in order to establish service connection for PTSD. It provides:

> Service connection for posttraumatic stress disorder requires medical evidence diagnosing the condition in accordance with § 4.125(a) of this chapter; a link, established by medical evidence, between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred.

38 C.F.R. § 3.304(f) (emphasis added).

This language contains no ambiguity. Section 3.304(f) does not state that a veteran "may" provide credible evidence of an in-service stressor in order to establish service connection for PTSD. Instead, by stating that such evidence is "require[d]," section 3.304(f) makes clear that credible evidence of an in-service stressor is a

mandatory or compulsory element in any claim for disability compensation for PTSD. See Golz v. Shinseki, 590 F.3d 1317, 1321 (Fed. Cir. 2010) ("Service connection for PTSD is awarded when the record before VA contains . . . credible supporting evidence that the claimed in-service stressor actually occurred . . . ."); Stone v. Nicholson, 480 F.3d 1111, 1114 (Fed. Cir. 2007) ("Section 3.304(f)(3) requires credible supporting evidence of the occurrence of the in-service stressor in PTSD claims."); Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs, 330 F.3d 1345, 1352 (Fed. Cir. 2003) ("Section 3.304(f) requires that, in non-combat-related PTSD claims, 'credible supporting evidence' in addition to lay evidence is needed to confirm a veteran's statements as to the occurrence of an in-service stressor.").

This court has previously determined that section 3.304(f), including the requirement of credible evidence of an in-service stressor, is consistent with governing statutes and is a valid exercise of the authority of the Secretary of Veterans Affairs "to promulgate regulations with respect to the nature and extent of proof and evidence necessary to establish entitlement to veterans benefits." Nat'l Org. of Veterans' Advocates, 330 F.3d at 1351 (citing 38 U.S.C. § 501(a)(1)). Arzio thus does not urge us to declare section 3.304(f) invalid, but instead asserts that because his service records contain evidence that he suffered from psychiatric difficulties while on active duty, he should be allowed to establish service connection under section 3.303 even without providing credible evidence of an in-service stressor.

The problem with this argument is that there is nothing in section 3.303—which is a broad regulatory provision addressing general service connection principles—that

suggests that a veteran can establish service connection for PTSD without meeting the criteria enumerated in section 3.304(f). Section 3.303 provides:

Principles relating to service connection.

(a) General. Service connection connotes many factors but basically it means that the facts, shown by evidence, establish that a particular injury or disease resulting in disability was incurred coincident with service in the Armed Forces, or if preexisting such service, was aggravated therein. This may be accomplished by affirmatively showing inception or aggravation during service or through the application of statutory presumptions. Each disabling condition shown by a veteran's service records, or for which he seeks a service connection must be considered on the basis of the places, types and circumstances of his service as shown by service records, the official history of each organization in which he served, his medical records and all pertinent medical and lay evidence. Determinations as to service connection will be based on review of the entire evidence of record, with due consideration to the policy of the Department of Veterans Affairs to administer the law under a broad and liberal interpretation consistent with the facts in each individual case.

38 C.F.R. § 3.303.

Section 3.303 contains no language indicating that it is intended to operate independently of, or as an alternative to, other regulations establishing the specific criteria under which service connection for particular conditions, such as PTSD, can be established. To the contrary, section 3.303 states that it sets forth "[g]eneral" principles related to service connection and provides a "basic[]" definition of a service-connected disability. Indeed, section 3.304 specifically acknowledges that "[t]he basic considerations relating to service connection are stated in [section] 3.303," but nonetheless provides additional prerequisites for establishing service connection for particular circumstances and conditions such as PTSD. Thus, when sections 3.303 and 3.304 are read together, it is evident that they do not provide alternative methods of establishing service connection, but instead work in tandem to delineate the

circumstances under which a veteran can establish service connection for PTSD. <u>See</u> <u>Barela v. Shinseki</u>, 584 F.3d 1379, 1383 (Fed. Cir. 2009) ("When interpreting a statute . . . courts must consider not only the bare meaning of each word but also the placement and purpose of the language within the statutory scheme. The meaning of statutory language . . . depends on context." (citations omitted)). Simply put, while section 3.303 mandates that there be a link between a current disability and military service, section 3.304(f) sets forth the evidence necessary, in the context of claims for PTSD disability compensation, to establish that link.

A basic tenet of statutory construction is that a specific statute takes precedence over a more general one. <u>See</u> <u>Morales v. Trans World Airlines, Inc.</u>, 504 U.S. 374, 384 (1992) ("[I]t is a commonplace of statutory construction that the specific governs the general."); <u>HCSC-Laundry v. United States</u>, 450 U.S. 1, 6 (1981) (per curiam) ("[I]t is a basic principle of statutory construction that a specific statute . . . controls over a general provision . . . particularly when the two are interrelated and closely positioned."); <u>Busic v. United States</u>, 446 U.S. 398, 406 (1980) ("[A] more specific statute will be given precedence over a more general one."); <u>Carpenter v. Principi</u>, 327 F.3d 1371, 1374 (Fed. Cir. 2003) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one." (citations and internal quotation marks omitted)). This canon of construction applies to the interpretation of regulations as well as statutes. <u>See</u> <u>Smith v. Brown</u>, 35 F.3d 1516, 1523 (Fed. Cir. 1994). Here, the specific requirements of section 3.304(f)—including the requirement of a verified in-service stressor—take precedence over the general principles related to service connection set forth in section 3.303.

Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994), upon which Arzio relies, is inapposite. There this court held that 38 C.F.R. § 3.311 provides for "presumptive service connection" when a veteran, who was exposed to radiation as a result of atmospheric testing or service in Hiroshima or Nagasaki, develops one of a number of specified "radiogenic" diseases. 34 F.3d at 1043. We determined that even if a veteran did not qualify for a presumption of service connection under section 3.311, he was entitled to attempt to establish direct service connection pursuant to section 3.303. We explained that section 3.311 was intended to be a "liberalization[]" of the requirements for establishing service connection pursuant to section 3.303 when a veteran, who was exposed to radiation, later developed one of several diseases which had been linked to radiation exposure. Id. at 1044. We noted, moreover, that section 3.311 originally "ensur[ed] that veterans could continue to show service connection directly" by explicitly stating that it should not "be construed to prevent the establishment of service connection for any injury or disease otherwise shown by sound scientific or medical evidence to have been incurred or aggravated during active service." Id.; see also Ramey v. Gober, 120 F.3d 1239, 1247-48 (Fed. Cir. 1997).

The present case differs from Combee in two fundamental respects. First, there is no indication that section 3.304(f) was intended to be a "liberalization" of the rules applicable to service connection. To the contrary, instead of providing for a presumption of service connection, section 3.304(f) restricts the situations in which disability compensation can be awarded by providing very specific criteria for establishing that a veteran's PTSD was incurred in service. Second, there is no regulatory provision stating that section 3.304(f) should not be construed to prevent a

veteran from establishing direct service connection under section 3.303. Instead, as noted previously, by providing that credible evidence of an in-service stressor is "require[d]," section 3.304(f) makes such evidence a mandatory component in establishing service connection for PTSD.

## CONCLUSION

Accordingly, the judgment of the United States Court of Appeals for Veterans Claims is affirmed.

## COSTS

No costs.

<u>AFFIRMED</u>